# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
--------------------------------------------------------------------x
ANIE AKPE-LEWIS,

Index #:

Plaintiff designates Kings
County as the place of trial.

                                    Plaintiff,

              -against-

Basis of Venue: Plaintiff's place
of residence.

MUNICIPAL CREDIT UNION, KAM WONG,
NORMAN KOHN, SHANNON MASHBURN,
MARK RICCA, SONITA DI FRANCO,
STELLA JIANG, and KAY WOODS

                                    Defendants.

# SUMMONS

Plaintiff resides at 578A Lexington Avenue,
Brooklyn, New York 11221

--------------------------------------------------------------------x

**TO THE ABOVE-NAMED DEFENDANTS:**

You are hereby summoned to answer the complaint in this action, and to serve a copy of your
Answer, or, if the Complaint is not served with this Summons, to serve a notice of Appearance, on counsel
for the plaintiff, within 20 days after the service of this Summons is complete, exclusive of the day of
service (or within 30 days after service of this Summons is complete, if this Summons is not personally
delivered to you within the State of New York). In case of your failure to appear or answer, judgment will
be taken against you by default for the relief demanded in the Complaint.

Dated:  New York, New York
        March 16, 2020

_____
CARLA P. BAUTISTA, ESQ.
**ALAN J. BENNETT, PLLC**
Attorneys for Plaintiff
ANIE AKPE-LEWIS
369 Lexington Avenue
Suite 213
New York, New York 10017
(212) 696-2116

**DEFENDANTS' ADDRESSES:**

MUNICIPAL CREDIT UNION:

c/o Secretary of State of New York, 1 Commerce
Plaza, 99 Washington Avenue, Albany, New York
12231; 22 Cortland Street, New York, New York
10007;

KAM WONG:

c/o FCI Fort Dix, 5756 Hartford St & Pointville
Road, Fort Dix, NJ 08640

NORMAN KOHN:

22 Sutton Drive, Manalapan, New Jersey 07726

SHANNON MASHBURN:          41 Eckernkamp Drive, Smithtown, New York 11787

MARK RICCA:          43 Rofay Drive, East Northport, New York 11731

SONITA DI FRANCO:          c/o Municipal Credit Union, 22 Cortland Street, New York, New York 10007;

STELLA JIANG:          c/o HR Xpress, LLC, 41 Eckernkamp Drive, Smithtown, New York 11787

KAY WOODS:          c/o Municipal Credit Union, 22 Cortland Street, New York, New York 10007;

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------------x

ANIE AKPE-LEWIS,

                         Plaintiff,

            -against-

MUNICIPAL CREDIT UNION, KAM WONG,
NORMAN KOHN, SHANNON MASHBURN,
MARK RICCA, SONITA DI FRANCO,
STELLA JIANG, and KAY WOODS

                     Defendants.

-----------------------------------------------------------------------x

Index #:
Date of Filing:

**VERIFIED
COMPLAINT**

     Plaintiff ANIE AKPE-LEWIS (hereinafter "Anie") by her counsel, ALAN J.

BENNETT, PLLC, as and for her Verified Complaint against the defendants

MUNICIPAL CREDIT UNION (hereinafter "MCU"), KAM WONG ("Wong"),

NORMAN KOHN ("Kohn"), SHANNON MASHBURN ("Mashburn"), MARK RICCA

("Ricca"), SONITA DI FRANCO ("Di Franco"), STELLA JIANG ("Jiang"), and KAY

WOODS ("Woods") (all defendants collectively referred to as "Defendants", and Wong,

Kohn, Mashburn, Ricca, Di Franco and Jiang collectively referred to as "Individual

Tortfeasors") respectfully alleges, upon information and belief, as follows:

## FACTS COMMON TO ALL CAUSES OF ACTION

1.    That at all times hereinafter alleged, the plaintiff resides in the County of Kings, in the State of New York.

2.    That at all times hereinafter alleged, MCU was and still is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York, maintains its principal place of business and transacts business within the County of New York, and as such, is subject to the jurisdiction of this Honorable Court.

3.    That at all times hereinafter alleged, MCU was and still is a foreign corporation, duly registered and authorized to transact business within the State of New York, maintained and maintains its principal place of

1

business, transacted and transacts business, within the County of New
York, and as such, is subject to the jurisdiction of this Honorable Court.

4.      That at all times hereinafter alleged, MCU was and still is an
        unincorporated association which transacts business within the State of
        New York, maintained and maintains its principal place of business,
        transacted and transacts business, within the County of New York, and as
        such, is subject to the jurisdiction of this Honorable Court.

5.      That at all times hereinafter alleged, MCU was and still is a not-for-profit
        corporation which transacts business within the State of New York,
        maintained and maintains its principal place of business, transacted and
        transacts business, within the County of New York, and as such, is subject
        to the jurisdiction of this Honorable Court.

6.      That at all times hereinafter alleged, MCU is a New York not-for-profit
        corporation, has twenty (20) or more employees and an annual revenue of
        more than $1 million.

7.      That at all times hereinafter alleged, Wong was and is a resident of the
        County of Burlington, in the State of New Jersey, and as such, Wong is
        subject to the jurisdiction of this Honorable Court.

8.      That at all times hereinafter alleged, Kohn was and is a resident of the
        County of Monmouth, in the State of New Jersey, and as such, Kohn is
        subject to the jurisdiction of this Honorable Court.

9.      That at all times hereinafter alleged, Mashburn was and is a resident of
        the County of Suffolk, in the State of New York, and as such, Mashburn
        is subject to the jurisdiction of this Honorable Court.

10.     That at all times hereinafter alleged, Ricca was and is a resident of the
        County of Suffolk, in the State of New York, and as such, Ricca is subject
        to the jurisdiction of this Honorable Court.

11.     That at all times hereinafter alleged, Di Franco was and is a resident of
        the State of New York, and as such, Di Franco is subject to the
        jurisdiction of this Honorable Court.

12.     That at all times hereinafter alleged, Jiang was and is a resident of the
        State of New York, and as such, Jiang is subject to the jurisdiction of this
        Honorable Court.

13.     That at all times hereinafter alleged, Woods was and is a resident of the
        State of New York, and as such, Woods is subject to the jurisdiction of
        this Honorable Court.

2

14. That at all times hereinafter alleged, MCU was and is in the business of providing banking, lending and loan services, and transactions to its clients located within various Counties of the City and State of New York.

15. That at all times hereinafter alleged, Wong was an officer, director, shareholder, agent, servant and/or employee of MCU.

16. That at all times hereinafter alleged, Kohn was an officer, director, shareholder, agent, servant and/or employee of MCU.

17. That at all times hereinafter alleged, Mashburn was an officer, director, shareholder, agent, servant and/or employee of MCU.

18. That at all times hereinafter alleged, Ricca was an officer, director, shareholder, agent, servant and/or employee of MCU.

19. That at all times hereinafter alleged, Di Franco was an officer, director, shareholder, agent, servant and/or employee of MCU.

20. That at all times hereinafter alleged, Jiang was an officer, director, shareholder, agent, servant and/or employee of MCU.

21. That at all times hereinafter alleged, Woods was an officer, director, shareholder, agent, servant and/or employee of MCU.

22. By and around June 26, 2019, Woods was the Chief Executive Officer ("CEO") or designee of MCU.

23. That at all times hereinafter alleged, Wong was Anie's supervisor, and as such, Wong directed and controlled the terms and conditions of Anie's employment at MCU.

24. That at all times hereinafter alleged, Kohn was Anie's supervisor, and as such, Kohn directed and controlled the terms and conditions of Anie's employment at MCU.

25. That at all times hereinafter alleged, Mashburn was Anie's supervisor, and as such, Mashburn directed and controlled the terms and conditions of Anie's employment at MCU.

26. That at all times hereinafter alleged, Ricca was Anie's supervisor, and as such, Ricca directed and controlled the terms and conditions of Anie's employment at MCU.

3

27.    That at all times hereinafter alleged, Di Franco was Anie's supervisor, and as such, Di Franco directed and controlled the terms and conditions of Anie's employment at MCU.

28.    That at all times hereinafter alleged, Jiang was Anie's supervisor, and as such, Jiang directed and controlled the terms and conditions of Anie's employment at MCU.

29.    That at all times hereinafter alleged, Woods was Anie's supervisor, and as such, Woods directed and controlled the terms and conditions of Anie's employment at MCU.

30.    That any and all of the actions, conduct, behavior and occurrences of Wong, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification, and within the scope of his duties and responsibilities as an agent, servant and/or employee, of MCU.

31.    That any and all of the actions, conduct, behavior and occurrences of Kohn, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification, and within the scope of his duties and responsibilities as an agent, servant and/or employee, of MCU.

32.    That any and all of the actions, conduct, behavior and occurrences of Mashburn, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification, and within the scope of his duties and responsibilities as an agent, servant and/or employee, of MCU.

33.    That any and all of the actions, conduct, behavior and occurrences of Ricca, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification, and within the scope of his duties and responsibilities as an agent, servant and/or employee, of MCU.

34.    That any and all of the actions, conduct, behavior and occurrences of Di Franco, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification, and within the scope of his duties and responsibilities as an agent, servant and/or employee, of MCU.

35.    That any and all of the actions, conduct, behavior and occurrences of Jiang, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification, and within the scope of

4

his duties and responsibilities as an agent, servant and/or employee, of MCU.

36. That any and all of the actions, conduct, behavior and occurrences of Woods, as is alleged herein, were conducted, actuated and performed with the knowledge, consent, authority and ratification, and within the scope of his duties and responsibilities as an agent, servant and/or employee, of MCU.

37. That at all times hereinafter alleged, MCU employed more than fifteen (15) employees, and as such constituted and constitutes an "employer" within the meaning of the Federal anti-discrimination laws pursuant Title VII of the Civil Rights Act of 1964.

38. That at all times hereinafter alleged, Anie was an "employee", as that term is defined by the Federal anti-discrimination laws pursuant Title VII of the Civil Rights Act of 1964.

39. That at all times hereinafter alleged, MCU constituted and constitutes an "employer", as that term is defined by the relevant provisions of the Fair Labor Standards Act, 29 U.S.C. 201, et seq., and interpreting case precedent (hereinafter "FLSA").

40. That at all times hereinafter alleged, Anie was an "employee", as that term is defined by the FLSA.

41. That at all times hereinafter alleged, Wong was an "employer" as that term is defined by FLSA.

42. That at all times hereinafter alleged, Kohn was an "employer" as that term is defined by FLSA.

43. That at all times hereinafter alleged, Mashburn was an "employer" as that term is defined by FLSA.

44. That at all times hereinafter alleged, Ricca was an "employer" as that term is defined by FLSA.

45. That at all times hereinafter alleged, Di Franco was an "employer" as that term is defined by FLSA.

46. That at all times hereinafter alleged, Jiang was an "employer" as that term is defined by FLSA.

47. That at all times hereinafter alleged, Woods was an "employer" as that term is defined by FLSA.

5

48. That at all times hereinafter alleged, MCU constituted and constitutes an "employer", as that term is defined by the relevant provisions of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA").

49. That at all times hereinafter alleged, Anie was an "employee", as that term is defined by the ERISA.

50. That pursuant to Anie's employment with MCU, she was entitled to and received employee benefits, including but not limited to, a 401(k)-retirement account and health insurance benefits ("Employee Benefits").

51. That at all times hereinafter alleged, MCU employed more than four (4) employees, and as such constituted and constitutes an "employer" within the meaning of the City and State of New York anti-discrimination laws.

52. That at all times hereinafter alleged, Anie was an "employee", as that term is defined by the City and State of New York anti-discrimination laws.

53. That at all times hereinafter alleged, MCU employed one (1) or more employees, and as such constituted and constitutes an "employer" within the meaning of § 296, et seq., of the Executive Law of the State of New York and interpreting case precedent (hereinafter "Executive Law").

54. That at all times hereinafter alleged, MCU employed four (4) or more employees, and as such constituted and constitutes an "employer" within the meaning of § 296, et seq., of the Executive Law of the State of New York and interpreting case precedent (hereinafter "Executive Law").

55. That at all times hereinafter alleged, Anie was an "employee", as that term is defined by the Executive Law.

56. That at all times hereinafter alleged, Wong was a "supervisor", as that term is defined by the Executive Law.

57. That at all times hereinafter alleged, Kohn was a "supervisor", as that term is defined by the Executive Law.

58. That at all times hereinafter alleged, Mashburn was a "supervisor", as that term is defined by the Executive Law.

59. That at all times hereinafter alleged, Ricca was a "supervisor", as that term is defined by the Executive Law.

6

60.     That at all times hereinafter alleged, Di Franco was a "supervisor", as that term is defined by the Executive Law.

61.     That at all times hereinafter alleged, Jiang was a "supervisor", as that term is defined by the Executive Law.

62.     That at all times hereinafter alleged, Woods was a "supervisor", as that term is defined by the Executive Law.

63.     That at all times hereinafter alleged, Wong was an "aider and abettor", as that term is defined by the Executive Law.

64.     That at all times hereinafter alleged, Kohn was an "aider and abettor", as that term is defined by the Executive Law.

65.     That at all times hereinafter alleged, Mashburn was an "aider and abettor", as that term is defined by the Executive Law.

66.     That at all times hereinafter alleged, Ricca was an "aider and abettor", as that term is defined by the Executive Law.

67.     That at all times hereinafter alleged, Di Franco was an "aider and abettor", as that term is defined by the Executive Law.

68.     That at all times hereinafter alleged, Jiang was an "aider and abettor", as that term is defined by the Executive Law.

69.     That at all times hereinafter alleged, Woods was an "aider and abettor", as that term is defined by the Executive Law.

70.     That at all times alleged, Wong was and is an individual subject to liability to Anie herein, per the Executive Law.

71.     That at all times alleged, Kohn was and is an individual subject to liability to Anie herein, per the Executive Law.

72.     That at all times alleged, Mashburn was and is an individual subject to liability to Anie herein, per the Executive Law.

73.     That at all times alleged, Ricca was and is an individual subject to liability to Anie herein, per the Executive Law.

74.     That at all times alleged, Di Franco was and is an individual subject to liability to Anie herein, per the Executive Law.

7

75. That at all times alleged, Jiang was and is an individual subject to liability to Anie herein, per the Executive Law.

76. That at all times alleged, Woods was and is an individual subject to liability to Anie herein, per the Executive Law.

77. That at all times hereinafter alleged, MCU is an "employer", as that term is defined the relevant provisions of Article 1 § 190, et seq., of the Labor Law of the State of New York, and by interpreting case precedent (hereinafter "New York Wage and Hour Laws").

78. That at all times hereinafter alleged Anie was an "employee", as that term is defined by the New York Wage and Hour Laws.

79. That at all times alleged, Wong was and is an individual subject to liability to Anie herein, per the New York Wage and Hour Laws.

80. That at all times alleged, Kohn was and is an individual subject to liability to Anie herein, per the New York Wage and Hour Laws.

81. That at all times alleged, Mashburn was and is an individual subject to liability to Anie herein, per the New York Wage and Hour Laws.

82. That at all times alleged, Ricca was and is an individual subject to liability to Anie herein, per the New York Wage and Hour Laws.

83. That at all times alleged, Di Franco was and is an individual subject to liability to Anie herein, per the New York Wage and Hour Laws.

84. That at all times alleged, Jiang was and is an individual subject to liability to Anie herein, per the New York Wage and Hour Laws.

85. That at all times alleged, Woods was and is an individual subject to liability to Anie herein, per the New York Wage and Hour Laws.

86. That at all times hereinafter alleged, MCU is an "employer", as that term is defined the relevant provisions of the New York State Wage Theft Prevention Act, New York State Labor Law § 195, et seq. (hereinafter "Wage Theft Prevention Act").

87. That at all times hereinafter alleged, Anie was an "employee", as that term is defined by the Wage Theft Prevention Act.

88. That at all times alleged, Wong was and is an individual subject to liability to Anie herein, per the Wage Theft Prevention Act.

8

89. That at all times alleged, Kohn was and is an individual subject to liability to Anie herein, per the Wage Theft Prevention Act.

90. That at all times alleged, Mashburn was and is an individual subject to liability to Anie herein, per the Wage Theft Prevention Act.

91. That at all times alleged, Ricca was and is an individual subject to liability to Anie herein, per the Wage Theft Prevention Act.

92. That at all times alleged, Di Franco was and is an individual subject to liability to Anie herein, per the Wage Theft Prevention Act.

93. That at all times alleged, Jiang was and is an individual subject to liability to Anie herein, per the Wage Theft Prevention Act.

94. That at all times alleged, Woods was and is an individual subject to liability to Anie herein, per the Wage Theft Prevention Act.

95. That at all times hereinafter alleged, MCU is an "employer", as that term is defined the relevant provisions of the Administrative Code of the City of New York, §8-107, et seq. (hereinafter "Administrative Code").

96. That at all times hereinafter alleged, Anie was an "employee", as that term is defined by the Administrative Code.

97. That at all times hereinafter alleged, Wong was a "supervisor", as that term is defined by the Administrative Code.

98. That at all times hereinafter alleged, Kohn was a "supervisor", as that term is defined by the Administrative Code.

99. That at all times hereinafter alleged, Mashburn was a "supervisor", as that term is defined by the Administrative Code.

100. That at all times hereinafter alleged, Ricca was a "supervisor", as that term is defined by the Administrative Code.

101. That at all times hereinafter alleged, Di Franco was a "supervisor", as that term is defined by the Administrative Code.

102. That at all times hereinafter alleged, Jiang was a "supervisor", as that term is defined by the Administrative Code.

103. That at all times hereinafter alleged, Woods was a "supervisor", as that term is defined by the Administrative Code.

9

104. That at all times hereinafter alleged, Wong was an "aider and abettor", as that term is defined by the Administrative Code.

105. That at all times hereinafter alleged, Kohn was an "aider and abettor", as that term is defined by the Administrative Code.

106. That at all times hereinafter alleged, Mashburn was an "aider and abettor", as that term is defined by the Administrative Code.

107. That at all times hereinafter alleged, Ricca was an "aider and abettor", as that term is defined by the Administrative Code.

108. That at all times hereinafter alleged, Di Franco was an "aider and abettor", as that term is defined by the Administrative Code.

109. That at all times hereinafter alleged, Jiang was an "aider and abettor", as that term is defined by the Administrative Code.

110. That at all times hereinafter alleged, Woods was an "aider and abettor", as that term is defined by the Administrative Code.

111. That at all times alleged, Wong was and is an individual subject to liability to Anie herein, per the Administrative Code.

112. That at all times alleged, Kohn was and is an individual subject to liability to Anie herein, per the Administrative Code.

113. That at all times alleged, Mashburn was and is an individual subject to liability to Anie herein, per the Administrative Code.

114. That at all times alleged, Ricca was and is an individual subject to liability to Anie herein, per the Administrative Code.

115. That at all times alleged, Di Franco was and is an individual subject to liability to Anie herein, per the Administrative Code.

116. That at all times alleged, Jiang was and is an individual subject to liability to Anie herein, per the Administrative Code.

117. That at all times alleged, Woods was and is an individual subject to liability to Anie herein, per the Administrative Code.

118. That at all times hereinafter alleged, Anie was and is a female.

119. That Anie was employed continuously by MCU from on or about November of 2002-June 26, 2019, initially entering the employ of MCU

10

as a loan originator, and earning promotions throughout a portion of her tenure at MCU, such that upon termination her title was Vice President of Mortgage Operations.

120. That throughout the entirety of Anie's tenure at MCU she was a non-exempt employee with a position above entry-level.

121. That throughout Anie's tenure at MCU, MCU drafted, promulgated, enacted, distributed, enforced and otherwise trained its servants, agents, employees, as to written policies, procedures, manual, provisions, customs and practices, regarding the rights, privileges, terms and conditions of employment at MCU (hereinafter "MCU's Handbook").

122. That throughout Anie's tenure at MCU, that MCU had the legal duty and obligation to comply with any and all relevant statutes, rules and regulations, including but not limited to, the New York State's Not-For-Profit Corporation Law, as amended by the Non-Profit Revitalization Act of 2013 (collectively the "Whistleblower Law"), with regards to the drafting, promulgating, enacting, distributing, and enforcing of MCU's Handbook, and otherwise training its servants, agents, employees with regards thereto.

123. That throughout Anie's tenure at MCU, MCU was and is a New York not-for-profit corporation, has twenty (20) or more employees and an annual revenue of more than $1 million, and is therefore required under the Whistleblower Law to adopt a policy protecting whistleblowers from retaliation.

124. § 715-B of the Whistleblower Law requires that the adopted whistleblower policy include specific procedures to protect employees who in good faith report misconduct from adverse employment actions.

125. That at all times alleged herein, MCU pursuant to the Whistleblower Law, is required to adopt a whistleblower policy to "protect from retaliation persons who reported suspected misconduct".

126. That at all times alleged herein compliance with MCU's Handbook was a condition precedent to employment, and continued employment, at MCU.

127. That MCU's Handbook was provided to all employees, including to Anie, at the inception of employment, and thereafter as may have been amended throughout the tenure of employment.

128. That at all times alleged herein, MCU's Handbook was in full force and effect throughout the tenure of Anie's employment at MCU, and constituted an employment contract as between MCU and its agents, servants and employees, including Anie.

11

129.   That throughout Anie's tenure at MCU, her employment was subject to, governed by, and required her compliance with, MCU's Handbook.

130.   That Anie detrimentally relied upon MCU's Handbook, its policies, rules and regulations, as a condition of her employment with MCU.

131.   That Anie detrimentally relied upon compliance by the Defendants, their agents, servants and employees, with MCU's Handbook, and that MCU's HAndbook complied with all relevant Federal, City and State of New York laws, rules and regulations, including but not limited to, the Whistleblower Law.

132.   That MCU's Handbook was to be applied to all employees of MCU equally, regardless of membership in a legally recognized protected class.

133.   That MCU's Handbook included the rights, privileges, terms and conditions of employment with MCU, and that those rights, privileges and terms and conditions of employment were to be applied to all MCU employee's equally, regardless of membership in a legally recognized protected class.

134.   That at all times alleged herein, pursuant to the Whistleblower Law, MCU was required to implement, draft, enact, train and enforce a policy that includes provisions (hereinafter the "Whistleblower Policy"):

        (1) Procedures for the reporting of violations or suspected violations of laws or corporate policies, including procedures for preserving the confidentiality of reported information;

        (2) A requirement that an employee, officer or director of the corporation be designated to administer the whistleblower policy and to report to the board or an authorized committee thereof, except that directors who are employees may not participate in any board or committee deliberations or voting relating to administration of the whistleblower policy;

        (3) A requirement that the person who is the subject of a whistleblower complaint not be present at or participate in board or committee deliberations or vote on the matter relating to such complaint, provided that nothing in this subparagraph shall prohibit the board or committee from requesting that the person who is subject to the complaint present information as background or answer questions at a committee or board meeting prior to the commencement of deliberations or voting relating thereto; and

12

(4) A requirement that a copy of the policy be distributed to all directors, officers, key persons, employees and to volunteers who provide substantial services to the corporation. For purposes of this subdivision, posting the policy on the corporation's website or at the corporation's offices in a conspicuous location accessible to employees and volunteers are among the methods a corporation may use to satisfy the distribution requirement.

135. That at all times alleged herein MCU, its agents, servants and employees, either did not have a Whistleblower Policy, that substantially complied with the Whistleblower Law, or failed to properly draft, develop, enact, train and enforce, a Whistleblower Policy which substantially complied with the Whistleblower Law (hereinafter "MCU's Whistleblower Policy").

136. That at all times alleged herein pursuant to Federal, State and City of New York Laws, MCU was required to have a sexual harassment/retaliation policy in effect in the MCU Handbook through Anie's tenure thereat (hereinafter the "Sexual Harassment/Retaliation Policy").

137. That MCU, its agents, servants and employees, either did not have a Sexual Harassment/Retaliation Policy, that substantially complied with the Federal, State and City of New York laws, or failed to properly draft, develop, enact, train and enforce, a Sexual Harassment/Retaliation Policy which substantially complied with Federal, State and City of New York laws.

138. That pursuant to MCU's Handbook, § 14.10 thereof, employees of MCU were to be given the opportunity to apply for vacancies, and specifically those for non-exempt jobs above entry level, before outside recruitment was utilized ("Job Vacancy Provision").

139. That the Job Vacancy Provision was in full force and effect during Anie's tenure at MCU.

140. That pursuant to MCU's Handbook, § 14.23, et seq. thereof, MCU had a grievance policy whereby MCU employees were to bring work-related complaints to the attention of management through a formal grievance procedure ("Grievance Policy").

141. That the Grievance Policy was in full force and effect during Anie's tenure at MCU.

142. That pursuant to the Grievance Policy, it was the responsibility of the supervisor to investigate the grievance, attempt to resolve it, and communicate a decision to the employee within a reasonable time period.

13

INDEX NO. 506619/2020

RECEIVED NYSCEF: 03/17/2020

143.  That pursuant to MCU's Handbook, § 14.34, et seq thereof., MCU had a policy whereby supervisors are required to maintain a workplace free of sexual harassment, and in the event of a complaint of sexual harassment, the procedure for an employee to report same ("Sexual Harassment Policy").

144.  That the Sexual Harassment Policy was in full force and effect during Anie's tenure at MCU.

145.  That pursuant to MCU's Handbook, § 14.49-2 thereof, MCU had a policy whereby MCU granted employees a short-term leave of absence for jury duty ("Jury Duty Policy").

146.  That the Jury Duty Policy was in full force and effect during Anie's tenure at MCU.

147.  That pursuant to MCU's Handbook, § 14.58-12 thereof, MCU had a policy whereby recommendation for a salary increase must be accompanied by a recent performance appraisal (not older than two [2] months) ("Salary Increase Policy").

148.  That the Salary Increase Policy was in full force and effect during Anie's tenure at MCU.

149.  That pursuant to MCU's Handbook, § 14.59, et seq. thereof, MCU had a policy whereby MCU granted severance pay to eligible terminated employees ("Severance Policy").

150.  That the Severance Policy was in full force and effect during Anie's tenure at MCU.

151.  That pursuant to the Severance Policy, in order to be eligible for a severance, an employee must be terminated after one [1] year of full-time service because of either a reduction in work force, elimination of the job, or insufficient aptitude for continued employment, not attributable to willful cause.

152.  That pursuant to the Severance Policy, if an employee is eligible for severance, the amount of severance would be equal to one (1) week's regular straight-time pay for each full year of continuous service, with a minimum of two (2) weeks and a maximum of fifteen (15) weeks.

153.  That pursuant to MCU's Handbook, § 14.54 thereof, MCU had a policy whereby an employee was involuntarily terminated, unused accrued

14

vacation pay and personal days up to the date of termination would be paid ("Termination Pay Policy").

154. That the Termination Pay Policy was in full force and effect during Anie's tenure at MCU.

155. Pursuant to the Termination Pay Policy, all terminations must be approved by the Chief Executive Officer or designee.

156. Pursuant to the Termination Pay Policy, supervisors must forward notices of termination to the Human Resources Department together with a written performance appraisal or evaluation for each employee.

157. That Anie's duties and responsibilities as the Vice President of Mortgage Operations during her tenure as an employee of MCU thereat included: overseeing the mortgage department (including but not limited to, mortgage loan originators, processors, underwriters, mortgage services and pre-funding unit) and aiding the department from business development through the processing of loans.

158. That throughout her tenure of employment with MCU, Anie's work quality, quantity and performance, was satisfactory or better.

159. That between on or about November of 2002-June 26, 2019, Anie's work performance was regularly and consistently recognized, acknowledged and rewarded by MCU, its agents, servants and employees, including but not limited to: receiving positive formal work performance reviews and accolades from MCU, its agents, servants, employees, vendors and clients; receiving merit salary increases and bonuses; and, receiving promotions with increased duties and responsibilities (in 2003 to the position of Manager, in 2008 to the position of Assistant Vice President, and in 2009 to the position of Vice President of Mortgage Operations).

160. That between on or about October 2007-December 2017, Anie was repeatedly the target of a replete, continuous, unwanted, hostile, adverse and pervasive illegal pattern of quid pro quo sexual harassment by Wong (the "Sexual Harassment").

161. That between on or about October 2007-December 2017, the Sexual Harassment to which Anie was subjected included but not limited to, constantly being propositioned to have an intimate and illicit sexual relationship with, and otherwise being the subject of sexual advances by, Wong.

162. That between on or about October 2007-December 2017, Anie, in compliance with the Sexual Harassment/Retaliation Policy, in no

15

uncertain terms, not only expressed to Wong that such conduct was inappropriate, unwanted and illegal, but Anie repeatedly reported such Sexual Harassment to Kohn.

163.    That rather than reasonably investigating and remediating Anie's complaints of Sexual Harassment, and in violation of the Sexual Harassment/Retaliation Policy, MCU and Kohn summarily dismissed Anie's complaints and never undertook a reasonable investigation or remediation thereof.

164.    That rather than MCU, its agents, servants or employees reasonably investigating and remediating Anie's complaints of Sexual Harassment, Kohn repeatedly warned and admonished Anie from seeking to protect her legal rights both under the Federal, State and City of New York antidiscrimination laws, as well under the relevant provisions of the MCU Handbook.

165.    That rather than MCU, its agents, servants or employees, reasonably investigating and remediating Anie's complaints of Sexual Harassment, Anie became the subject of an unabashed and intentional pervasive pattern and practice of adverse treatment, which permeated the work place, with regards to the terms and conditions of her employment at MCU, by the Defendants, in retaliation for Anie rebuffing Wong's Sexual Harassment, and for Anie's repeated attempts to report such conduct. Examples include, but are not limited to, the following:

> A. Anie being denied salary increases for two (2) years for (2018 and 2019);
>
> B. Anie being subjected to a 50% reduction of bonuses for four (4) years (2015-2019);
>
> C. Anie being denied regular performance evaluations despite the relevant provisions of MCU's Handbook requiring same;
>
> D. Anie being excluded from both monthly meetings with other Vice Presidents, and from MCU committee appointments;
>
> E. Anie suddenly being ridiculed for her afro hairstyle, and forcing Anie to pin her hair down.

166.    Throughout Anie's tenure at MCU, Anie discovered an increasing number of defaults on MCU installment loans, which Anie suspected were indicative of illegality, including fraud ("First Payment Defaults").

16

167.    Anie repeatedly reported the First Payment Defaults to Kohn in or about Spring of 2016 and Spring of 2018, from which Kohn represented that such First Payment Defaults would be reasonably and properly investigated and remediated.

168.    That on or about May of 2018, MCU initiated an internal investigation regarding alleged financial improprieties and/or illegal actions, conduct and behavior of Wong, as it pertained to the finances, books, assets, records, business, clients, relationships, loans and banking transactions of MCU, including the retention of outside counsel, Melissa Jampol, Esq. (hereinafter "Jampol") (hereinafter the "Wong Investigation").

169.    That on or about May of 2018, in conjunction with the Wong Investigation, the New York State Department of Financial Services removed MCU's Supervisory Committee.

170.    That on or about May of 2018, National Credit Union Administration ("NCUA"), in conjunction with the Wong Investigation, was appointed as conservator of MCU.

171.    That in conjunction with the Wong Investigation, Anie undertook to investigate, research, analyze and report on the books, records, business and clients of MCU ("Anie's Whistleblowing Investigation").

172.    That on or about May of 2018, Stella Mendez ("Mendez") was appointed administrator over MCU.

173.    That on or about May 2018, Anie, per inquiry by Jampol, as an initial report from Anie's Whistleblowing Investigation, reported and complained to Jampol, the following (collectively the "First Whistleblower Complaints"):

      i.   The aforesaid allegations of Sexual Harassment and retaliation, to which Anie was subjected to, that went previously uninvestigated and unremediated, in violation of all relevant provisions of the MCU Handbook;

     ii.   Anie being denied salary increases for two (2) years (2018 and 2019) (hereinafter "Salary Denial");

   iii.   Anie being subjected to a 50% reduction of bonuses for four (4) years (2015-2019) (hereinafter "Bonus Denial");

   iv.   Anie being excluded from both monthly meetings with other Vice Presidents, and from MCU committee appointments;

v. Anie suddenly being ridiculed for her afro hairstyle, and forcing Anie to pin her hair down.

174. That on or about June of 2018, based in whole and/or in part on the Wong Investigation, Wong was terminated from MCU.

175. That Jampol, with the knowledge, authority, consent, express and/or implied permission and/or ratification of the Defendants, instructed Anie to continue to investigate, research and report on her findings, from Anie's Whistleblowing Investigation.

176. That based in whole and/or in part on the Wong Investigation, Wong was convicted of embezzling approximately $10 million from MCU, and as a result, on or about June of 2019 Wong was sentenced to 5 ½ years in federal prison.

177. That, on or about October of 2018, Kohn became MCU's interim CEO.

178. That Kohn remained as Anie's supervisor through to February of 2019.

179. That as a result of Anie's Whistleblowing Investigation, Anie uncovered evidence that the financial improprieties and potential illegal and improper actions which premised the Wong Investigation, were more pervasive and widespread in terms of time, scope and breadth that MCU had believed, ancitipated, contemplated, accepted, or wanted to become public.

180. That is, between on or about May of 2018 and January of 2019, Anie's Whistleblowing Investigation uncovered and revealed evidence, which Anie disclosed to MCU, its agents, servants and employees, including to Jampol, financial improprieties involving MCU's books, records, business, clients, relationships, transactions, and cover-ups therefrom, including but not limited to the following (hereinafter "Anie's Secod Whistleblowing Complaint"):

i. An increased number of First Payment Defaults, which apparently continued uninvestigated and unremediated despite Anie's prior reports to, and representation from, Kohn. Upon information and belief, Anie's Whistleblowing Investigation revealed there to be over two hundred (200) installment transactions with First Payment Defaults;

ii. A memorandum dated May 6, 2013, wherein it was alleged that an MCU employee was involved in a down-payment embezzlement scheme regarding automobile purchase loans, a memorandum

18

iii. Kam compelled the issuance of a mortgage to a physician with whom, upon information and belief, Kam had close and/or personal relationship with, to purchase a residential condominium in a newly-constructed building that had not yet obtained a final Certificate of Occupancy, in contravention and violation of existing MCU loan underwriting protocols, standards, rules, customs and practices;

iv. Disclosing that Bonnie Heib ("Bonnie"), a former MCU Assistant Vice President of Loan Operations, admitted to Anie not only have been aware of the First Payment Defaults, but of multiple instances of loans being approved by MCU, its officers, agents, servants and/or employees, based on inaccurate and/or fraudulent information and income, despite such being repeated to MCU, its officers, agents, servants and/or employees.

181. That on or about January of 2019, NCUA held a meeting (the "NCUA Meeting") regarding the Wong Investigation, in attendance included Anie, Ricca, Mendez, Kohn, Ahmed Campbell ("Campbell"- Vice President of Consumer Lending) and John Parinello ("Parinello"- Vice President of Collections).

182. That during the NCUA Meeting, Anie again relayed, disclosed, reviewed and recounted to all in attendance Anie's First Whistleblowing Complaint and Anie's Second Whistleblowing Complaint (collectively referred to hereafter as "Anie's Multiple Whistleblowing Complaints").

183. That again, rather than MCU its agents, servants or employees immediately investigating and remediating Anie's Multiple Whistleblowing Complaints and on-going retaliation, Anie instead was subjected to further unlawful retaliation (with her Anie's Multiple Whistleblowing Complaints and retaliation therefrom continuing to be left wholly uninvestigated and/or unreasonable investigation and un-remediated) by the Defendants. Examples include, but are not limited to, the following:

A. Without either advising or permitting Anie to apply (despite being amply qualified, and in violation of the relevant provisions of the MCU Handbook), MCU suddenly created a new position (Head of Residential Lending, which is not an entry-level position as defined by the relevant provisions of the MCU Handbook), and in or about February of 2019, hired Di Franco for this newly-created position. Anie did not learn of

19

either this newly-created position, or of Di Franco's hire, until Anie was advised thereof in March of 2019 by MCU's head of the Human Resources Department Mashburn;

B. Anie being advised that she would finally be receiving a formal written work performance evaluation (which, however, was never forthcoming);

C. Anie not receiving a bonus, despite being advised that bonuses were to be announced in or about March of 2019;

D. Without warning, Anie was suddenly stripped of much of her duties and responsibilities (including the daily management and supervision of her department staff); and

E. When Anie complained of such on-going retaliation to MCU's Human Resources Department in or about April of 2019, including seeking the status, investigation and remediation of Anie's Multiple Whistleblowing Complaints, Mashburn not only summarily dismissed Anie's complaints, condescendingly admonishing Anie that she was "…lucky to have a job", and bluntly warning Anie that by continue to complaining, Anie was "…talking [Anie] out of a job";

184. That, Ricca succeeded Kohn as MCU's CEO, and remained at this position through to May of 2019.

185. In or about May of 2019, Woods became MCU's CEO, which continued through to the date of Anie's termination.

186. That again, rather than MCU, its agents, servants or employees immediately investigating and remediating Anie's aforesaid complaints of Sexual Harassment, retaliation therefrom, and retaliation from Anie's reporting of Anie's Multiple Whistleblowing Complaints, Anie instead was subjected to further unlawful retaliation (with her complaints of Sexual Harassment and retaliation wholly uninvestigated and/or unreasonably investigated and un-remedied) by the Defendants. Examples include, but are not limited to, the following:

F. Ricca, Di Franco and Mashburn permitting MCU department staff (including the Manager of the Mortgage Servicing Unit, Godfrey Samuel ["Samuel"]) to openly and brazenly flout, disrespect, and disobey the directives of, Anie, and refusing to conduct a full and objective investigation thereof (despite Samuel admitting complicity and apologizing for his conduct,

and despite Anie again complaining the status, investigation and remediation of Anie's Multiple Whistleblowing Complaints, during a meeting with MCU, its officers, agents servants and employees, including Mashburn, on or about June 25, 2019);

G. That during a meeting on June 26, 2019 with Mashburn, Di Franco and Jiang, Anie was terminated for unspecified work performance issues;

H. That this termination occurred despite Anie previously advising MCU, its agents, servants and employees that she was called to serve on a Grand Jury in violation of New York Judiciary Law § 519 (and in violation of the Jury Duty Policy);

I. That despite Anie's termination falling within the provisions of the Severance Policy, whereby Anie would be entitled to receive fifteen (15) weeks of severance pay (the "Severance Period"), Anie was afforded **no** severance pay (hereinafter "Severance Denial") (Salary Denial, Bonus Denial, and Severance Denial collectively referred to herein as "Wages and Wage Supplements"); and

J. That, in addition to severance pay, Anie was not afforded Employee Benefits during the Severance Period, in violation of ERISA.

187. That any and all alleged business justification for Anie's adverse treatment during her tenure with, and termination from, employment at MCU, were and are pretextual to conceal unlawful retaliation for her complaints of Sexual Harassment and Anie's Multiple Whistleblowing Complaints.

188. As a result of Anie's termination from employment with MCU, Anie applied for, and received, unemployment benefits through the New York State Department of Labor, which the Defendants failed to contest on any grounds, including legal cause or other willful misconduct.

189. That prior to her termination of employment at MCU, Anie secured a mortgage from MCU, for the purchase of her residential home ("Anie's Mortgage").

190. That on or about January of 2020, due to her termination of employment from MCU, Anie was unable to pay, and as a result defaulted on, Anie's Mortgage.

21

191. That in further retaliation for the aforesaid, MCU failed to either timely provide legally required documentation, information and applications, regarding the seeking of a forbearance and workout of Anie's Mortgage, the nature and extent of the delinquency and default, MCU's loss mitigation protocols, MCU's loss mitigation options, to negotiate in good-faith, in violation of the loan note and 3 CRR-NY 419.11.

192. That on or about October 8, 2019, Anie filed a complaint regarding the aforesaid with the Equal Employment Opportunity Commission.

193. That the Equal Employment Opportunity Commission issued to Anie a Right to Sue Letter dated February 1, 2020, to initiate the subject action.

194. That Anie has complied with all conditions precedent to the commencement of the subject action.

## AS AND FOR THE FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS FOR UNLAWFUL DISCRIMINATION IN VIOLATION OF EXECUTIVE LAW SECTION 296(1)(a)

195. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"194" of this Complaint as though fully and completely set forth at length herein.

196. It is a violation of the New York State anti-discrimination laws for employers such as MCU to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

197. It is a violation of the New York State anti-discrimination laws for a supervisor such as Wong to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

198. It is a violation of the New York State anti-discrimination laws for a supervisor such as Kohn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

199. It is a violation of the New York State anti-discrimination laws for a supervisor such as Mashburn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

200. It is a violation of the New York State anti-discrimination laws for a supervisor such as Ricca to discriminate in the terms and conditions of

22

employment because an employee such as Anie is a member of a statutorily protected class of individuals.

201.    It is a violation of the New York State anti-discrimination laws for a supervisor such as Di Franco to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

202.    It is a violation of the New York State anti-discrimination laws for a supervisor such as Jiang to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

203.    It is a violation of the New York State anti-discrimination laws for a supervisor such as Woods to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

204.    It is a violation of the New York State anti-discrimination laws for an aider and abettor such as Wong to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

205.    It is a violation of the New York State anti-discrimination laws for an aider and abettor such as Kohn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

206.    It is a violation of the New York State anti-discrimination laws for an aider and abettor such as Mashburn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

207.    It is a violation of the New York State anti-discrimination laws for an aider and abettor such as Ricca to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

208.    It is a violation of the New York State anti-discrimination laws for an aider and abettor such as Di Franco to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

209.    It is a violation of the New York State anti-discrimination laws for an aider and abettor such as Jiang to discriminate in the terms and conditions

23

of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

210. It is a violation of the New York State anti-discrimination laws for an aider and abettor such as Woods to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

211. Employees that have the terms and conditions of their employment changed, as well as being terminated from employment, because of their gender are defined by the New York State anti-discrimination statutes and by case precedent as a protected class.

212. Anie was and is a member of the aforesaid protected classes.

213. That the Defendants intentionally perpetuated, and allowed to continue, a pattern of replete and pervasive pattern of Sexual Harassment against Anie.

214. That the Defendants intentionally discriminated against Anie for Anie's Multiple Whistleblower Complaints, in that Anie was denied bonuses, raises and, ultimately terminated, without Severance Pay or Employee Benefits, for her legally protected actions.

215. The aforesaid conduct, actions and behavior of the Defendants, their agents, servants or employees, were based upon her membership in the aforesaid protected class, in violation of the aforesaid New York State anti-discrimination statutes.

216. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

217. In addition to suffering significant economic damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

218. As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

24

219. That the aforesaid actions, conduct and behavior of the Defendants, their agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court.

220. Anie, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to imposition upon the Defendants of an award of punitive damages, attorney's fees, Court costs and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS FOR UNLAWFUL RETALIATION IN VIOLATION OF EXECUTIVE LAW SECTION 296, ET SEQ.

221. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"220" of this Complaint as though fully and completely set forth at length herein.

222. It is a violation of the Executive Law for employers such as MCU to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

223. It is a violation of the Executive Law for a supervisor such as Wong to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

224. It is a violation of the Executive Law for a supervisor such as Kohn to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

225. It is a violation of the Executive Law for a supervisor such as Mashburn to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

226. It is a violation of the Executive Law for a supervisor such as Ricca to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

227. It is a violation of the Executive Law for a supervisor such as Di Franco to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

25

228. It is a violation of the Executive Law for a supervisor such as Jiang to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

229. It is a violation of the Executive Law for a supervisor such as Woods to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

230. It is a violation of the Executive Law for an aider and abettor such as Wong to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

231. It is a violation of the Executive Law for an aider and abettor such as Kohn to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

232. It is a violation of the Executive Law for an aider and abettor such as Mashburn to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

233. It is a violation of the Executive Law for an aider and abettor such as Ricca to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

234. It is a violation of the Executive Law for an aider and abettor such as Di Franco to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

235. It is a violation of the Executive Law for an aider and abettor such as Jiang to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

236. It is a violation of the Executive Law for an aider and abettor such as Woods to retaliate against an employee such as Anie for complaints of discrimination in the workplace.

237. That the Defendants intentionally perpetuated, and allowed to continue, a pattern of replete and pervasive pattern of Sexual Harassment against Anie, despite repeated complaints.

238. That the Defendants intentionally retaliated against Anie for Anie's Multiple Whistleblower Complaints, in that Anie was denied bonuses, raises and, ultimately terminated, without Severance Pay or Employee Benefits, for her legally protected actions.

26

239.    The aforesaid conduct, actions and behavior of the defendants, its and
        their agents, servants or employees, were based upon Anie's complaints
        of discrimination, in violation of the aforesaid Executive Law.

240.    That any and all alleged reasons, explanations or justifications for the
        aforesaid conduct, behavior and actions were and are a pretext for
        retaliation.

241.    In addition to suffering significant economic damages, loss of bonuses,
        income, perks and benefits, Wages and Wage Supplements, Anie was
        caused to suffer physical injuries, stress, humiliation, emotional and
        psychological damages, mental pain and suffering, and will continue to so
        suffer into the future, all because of defendants' outrageous and
        reprehensible conduct in violating Anie's human rights.

242.    As a proximate result of Defendants' conduct, Anie has been adversely
        affected in her employment opportunities, her normal life's pursuits, and
        she believes that these injuries have and will continue to have an
        irreparably devastating effect upon the quality of her life, and will prevent
        her from functioning as she did prior to the occurrences complained of
        herein.

243.    That the aforesaid actions, conduct and behavior of the Defendants, their
        agents, servants and employees, are beyond and what is considered
        reasonable and acceptable in a civilized society, and shocks the
        conscience of this Honorable Court.

244.    Anie, therefore, seeks monetary damages for this cause of action, in an
        amount in excess of the jurisdictional limits of all lower Courts, the sum
        of which to be determined by the trier of fact, in addition to the
        imposition upon the defendants, of a separate award of punitive damages,
        attorney's fees, Court costs and disbursements.

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS FOR UNLAWFUL DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8 OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

245.    Plaintiff repeats and realleges each and every allegation contained in
        paragraph #'s "1"-"244" of this Complaint as if fully and completely set
        forth at length herein.

246.    It is a violation of the City of New York anti-discrimination laws for
        employers such as MCU to discriminate in the terms and conditions of
        employment because an employee is a member of a statutorily protected
        class of individuals.

27

247. It is a violation of the City of New York anti-discrimination laws for a supervisor such as Wong to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

248. It is a violation of the City of New York anti-discrimination laws for a supervisor such as Kohn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

249. It is a violation of the City of New York anti-discrimination laws for a supervisor such as Mashburn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

250. It is a violation of the City of New York anti-discrimination laws for a supervisor such as Ricca to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

251. It is a violation of the City of New York anti-discrimination laws for a supervisor such as Di Franco to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

252. It is a violation of the City of New York anti-discrimination laws for a supervisor such as Jiang to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

253. It is a violation of the City of New York anti-discrimination laws for a supervisor such as Woods to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

254. It is a violation of the City of New York anti-discrimination laws for an aider and abettor such as Wong to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

255. It is a violation of the City of New York anti-discrimination laws for an aider and abettor such as Kohn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

28

256.	It is a violation of the City of New York anti-discrimination laws for an aider and abettor such as Mashburn to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

257.	It is a violation of the City of New York anti-discrimination laws for an aider and abettor such as Ricca to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

258.	It is a violation of the City of New York anti-discrimination laws for an aider and abettor such as Di Franco to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

259.	It is a violation of the City of New York anti-discrimination laws for an aider and abettor such as Jiang to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

260.	It is a violation of the City of New York anti-discrimination laws for an aider and abettor such as Woods to discriminate in the terms and conditions of employment because an employee such as Anie is a member of a statutorily protected class of individuals.

261.	Employees that have the terms and conditions of their employment changed, as well as being terminated from employment, because of their gender are defined by the City of New York anti-discrimination statutes and by case precedent as a protected class.

262.	Anie was and is a member of the aforesaid protected classes.

263.	That the Defendants intentionally perpetuated, and allowed to continue, a pattern of replete and pervasive pattern of Sexual Harassment against Anie.

264.	That the Defendants intentionally discriminated against Anie for Anie's Multiple Whistleblower Complaints, in that Anie was denied bonuses, raises and, ultimately terminated, without Severance Pay or Employee Benefits, for her legally protected actions.

265.	The aforesaid conduct, actions and behavior of the Defendants, their agents, servants or employees, were based upon her membership in the aforesaid protected class, in violation of the aforesaid City of New York anti-discrimination statutes.

29

266.   That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

267.   In addition to suffering significant loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Defendants' outrageous and reprehensible conduct in violating Anie's human rights.

268.   As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

269.   That the aforesaid actions, conduct and behavior of the Defendants, their agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court.

270.   Anie, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the defendants, of a separate award of punitive damages, attorney's fees, Court costs and disbursements.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS FOR UNLAWFUL RETALIATION IN VIOLATION OF CHAPTER I, TITLE 8 OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

271.   Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"270" of this Complaint as though fully and completely set forth at length herein.

272.   It is a violation of the Administrative Code for employers such as MCU to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

273.   It is a violation of the Administrative Code for supervisors such as Wong to retaliate in the terms and conditions of employment, because an

30

employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

274. It is a violation of the Administrative Code for supervisors such as Kohn to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

275. It is a violation of the Administrative Code for supervisors such as Mashburn to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

276. It is a violation of the Administrative Code for supervisors such as Ricca to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

277. It is a violation of the Administrative Code for supervisors such as Di Franco to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

278. It is a violation of the Administrative Code for supervisors such as Jiang to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

279. It is a violation of the Administrative Code for supervisors such as Woods to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

280. It is a violation of the Administrative Code for an aider and abettor such as Wong to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

281. It is a violation of the Administrative Code for an aider and abettor such as Kohn to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

282. It is a violation of the Administrative Code for an aider and abettor such as Mashburn to retaliate in the terms and conditions of employment,

31

because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

283.   It is a violation of the Administrative Code for an aider and abettor such as Ricca to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

284.   It is a violation of the Administrative Code for an aider and abettor such as Di Franco to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

285.   It is a violation of the Administrative Code for an aider and abettor such as Jiang to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

286.   It is a violation of the Administrative Code for an aider and abettor such as Woods to retaliate in the terms and conditions of employment, because an employee such as Anie makes complaints regarding gender discrimination/sexual harassment.

287.   Employees that have the terms and conditions of their employment changed, as well as being terminated from employment, because of their gender and/or be subject to sexual harassment in the workplace, are defined by the Administrative Code and by case precedent as a protected class.

288.   Anie was and is a member of the aforesaid protected class.

289.   That the Defendants intentionally retaliated against Anie for Anie's Multiple Whistleblower Complaints, in that Anie was denied bonuses, raises and, ultimately terminated, without Severance Pay or Employee Benefits, for her legally protected actions.

290.   The aforesaid conduct, actions and behavior of the Defendants, its and their agents, servants or employees, were based upon her membership in the aforesaid protected class, in violation of the aforesaid Administrative Code.

291.   That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for retaliation.

32

292. In addition to suffering significant economic damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

293. As a proximate result of defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

294. That the aforesaid actions, conduct and behavior of the defendants, their agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court.

295. Anie, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the defendants, of a separate award of punitive damages and attorney's fees.

## AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST MCU FOR VIOLATION OF THE NON-PROFIT REVITILIZATION ACT § 715-B

296. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"295" of this Complaint as though fully and completely set forth at length herein.

297. New York State's Not-For-Profit Corporation Law, as amended by the Non-Profit Revitalization Act of 2013 (collectively the "Whistleblower"), provides an implied private right of action against employer who fail to protect their employee whistleblowers from retaliation.

298. Upon information and belief, MCU is a New York not-for-profit corporation, has twenty (20) or more employees and an annual revenue of more than $1 million, and is therefore required under the NFPC to adopt a policy protecting whistleblowers from retaliation.

299. § 715-B of the NFPC requires that the adopted whistleblower policy include specific procedures to protect employees who in good faith report misconduct from adverse employment actions.

33

300. MCU, under the provisions of the NFPC, was required to adopt a whistleblower policy to "protect from retaliation persons who reported suspected misconduct".

301. Anie is within the class of persons whose particular benefit the statute was enacted and her claims against MCU would promote the legislative purpose of the protection of whistleblowers, including its enforcement.

302. That MCU, its agents, servants and employees, did not have a Whistleblower Policy.

303. That in the alternative, MCU's Whistleblower Policy failed to substantially comply with the Whistleblower Law, and/or MCU failed to properly draft, develop, enact, train and enforce, a Whistleblower Policy which substantially complied with the Whistleblower Law.

304. In addition to suffering significant economic damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

305. As a proximate result of defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

306. That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

307. That therefore MCU is indebted and liable to Anie, and Anie is entitled to Judgment as against MCU, in excess of the jurisdictional limits of all lower courts, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, attorneys' fees, Court costs and disbursements.

## AS AND FOR AN SIXTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST MCU FOR VIOLATION OF THE NON-PROFIT REVITILIZATION ACT § 715-B

308. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"307" of this Complaint as though fully and completely set forth at length herein.

309. New York State's Not-For-Profit Corporation Law, as amended by the Non-Profit Revitalization Act of 2013 (collectively the "Whistleblower"), provides an implied private right of action against employer who fail to protect their employee whistleblowers from retaliation.

310. Upon information and belief, MCU is a New York not-for-profit corporation, has twenty (20) or more employees and an annual revenue of more than $1 million, and is therefore required under the NFPC to adopt a policy protecting whistleblowers from retaliation.

311. § 715-B of the NFPC requires that the adopted whistleblower policy include specific procedures to protect employees who in good faith report misconduct from adverse employment actions.

312. MCU, under the provisions of the NFPC, as required to adopt a whistleblower policy to "protect from retaliation persons who reported suspected misconduct".

313. In addition to suffering significant economic damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

314. As a proximate result of defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

315. Anie is within the class of persons whose particular benefit the statute was enacted, and her claims against MCU would promote the legislative purpose of the protection of whistleblowers, including its enforcement.

316. MCU's aforesaid actions of retaliation against Anie was and are in violation of its obligations under § 715-B of the NFPC.

35

317. That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

318. That therefore MCU is indebted and liable to Anie, and Anie is entitled to Judgment as against MCU, for the sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, attorneys' fees, Court costs and disbursements.

## AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS FOR VIOLATION OF § 190, ET SEQ., OF THE LABOR LAW OF THE STATE OF NEW YORK- FAILURE TO PAY WAGES AND WAGE/SUPPLEMENTS BENEIFTS

319. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"318" of this Complaint as though fully and completely set forth at length herein.

320. New York State Labor Law § 190 defines "wages" of an employee to include Wages and Wage Supplements.

321. It is a violation of the State of New York Labor Law § 193 for employers such as MCU to deduct Wages and Wage Supplements from an employee such as Anie except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

322. It is a violation of the State of New York Labor Law § 193 for individuals such as Wong, to deduct Wages and Wage Supplements from an employee such as Anie, except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

36

323.    It is a violation of the State of New York Labor Law § 193 for individuals such as Kohn, to deduct Wages and Wage Supplements from an employee such as Anie, except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

324.    It is a violation of the State of New York Labor Law § 193 for individuals such as Mashburn, to deduct Wages and Wage Supplements from an employee such as Anie, except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

325.    It is a violation of the State of New York Labor Law § 193 for individuals such as Ricca, to deduct Wages and Wage Supplements from an employee such as Anie, except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

326.    It is a violation of the State of New York Labor Law § 193 for individuals such as Di Franco, to deduct Wages and Wage Supplements from an employee such as Anie, except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and

37

conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

327. It is a violation of the State of New York Labor Law § 193 for individuals such as Jiang, to deduct Wages and Wage Supplements from an employee such as Anie, except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

328. It is a violation of the State of New York Labor Law § 193 for individuals such as Woods, to deduct Wages and Wage Supplements from an employee such as Anie, except when those deductions (a) are made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency including regulations promulgated under paragraph c and paragraph d of this subdivision; or (b) are expressly authorized in writing by the employee and are for the benefit of the employee, provided that such authorization is voluntary and only given following receipt by the employee of written notice of all terms and conditions of the payment and/or its benefits and the details of the manner in which deductions will be made.

329. Anie's Wages and Wage Supplements were improperly deducted and/or unpaid, in violation of New York State Labor Law § 193.

330. Anie's Wages and Wage Supplements were improperly deducted and/or unpaid based on her complaints of sexual harassment/gender discrimination in violation of New York State Labor Law § 193.

331. Anie's Wages and Wage Supplements were improperly deducted and/or unpaid based as a result of Anie's Second Whistleblower Complaints in violation of New York State Labor Law § 193.

332. The aforesaid conduct, actions and behavior of the defendants, its and their agents, servants or employees, were based upon her membership in the aforesaid protected class, in violation of the aforesaid New York State Labor Law statute.

333. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions of the Employer and Individual Tortfeasors were intentional.

38

334. That the aforesaid actions, conduct and behavior of the Employer and Individual Tortfeasors, its and their agents, servants and employees, were based on Anie's gender, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of Liquidated Damages of unpaid Wages and Wage Supplements, or three (3x) times unpaid Wages and Wage Supplements (hereinafter "Treble Damages"), pursuant to New York State Labor Law §§ 194 and 195.

335. That the aforesaid actions, conduct and behavior of the Employer and Individual Tortfeasors, its and their agents, servants and employees, were based on Anie's gender, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of Liquidated Damages of unpaid Wages and Wage Supplements, or two (2x) times unpaid Wages and Wage Supplements (hereinafter "Double Damages"), pursuant to New York State Labor Law §§ 194 and 195.

336. Anie, therefore, seeks monetary damages for this cause of action, in an amount equal to unpaid Wages and Wage Supplements backpay, in addition to an award of Treble Damages or Double Damages, attorney's fees, interests, Court costs and disbursements.

## AS AND FOR A EIGHTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS, IN VIOLATIONS OF § 215 OF THE LABOR LAW OF THE STATE OF NEW YORK AGAINST ALL DEFENDANTS– WAGE THEFT PREVENTION ACT

337. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"336" of this Complaint as though fully and completely set forth at length herein.

338. It is a violation of § 215 of the Labor Law of the State of New York (hereinafter the "New York State Wage Theft Prevention Act"), for an employer, such as MCU, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an employee such as Anie complained to MCU, its agents, servants and/or employees, of an alleged violation of a labor law.

339. It is a violation of the New York State Wage Theft Prevention Act, for an individual such as Wong, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an

39

employee such as Anie, complained to the defendants, its and their agents, servants and/or employees, of an alleged violation of a labor law.

340.   It is a violation of the New York State Wage Theft Prevention Act, for an individual such as Kohn, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an employee such as Anie, complained to the defendants, its and their agents, servants and/or employees, of an alleged violation of a labor law.

341.   It is a violation of the New York State Wage Theft Prevention Act, for an individual such as Ricca, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an employee such as Anie, complained to the defendants, its and their agents, servants and/or employees, of an alleged violation of a labor law.

342.   It is a violation of the New York State Wage Theft Prevention Act, for an individual such as Mashburn, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an employee such as Anie, complained to the defendants, its and their agents, servants and/or employees, of an alleged violation of a labor law.

343.   It is a violation of the New York State Wage Theft Prevention Act, for an individual such as Di Franco, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an employee such as Anie, complained to the defendants, its and their agents, servants and/or employees, of an alleged violation of a labor law.

344.   It is a violation of the New York State Wage Theft Prevention Act, for an individual such as Jiang, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an employee such as Anie, complained to the defendants, its and their agents, servants and/or employees, of an alleged violation of a labor law.

345.   It is a violation of the New York State Wage Theft Prevention Act, for an individual such as Woods, to discharge, penalize, or in any manner discriminate or retaliate against an employee, such as Anie, regarding the terms and conditions of the employee's employment, because an employee such as Anie, complained to the defendants, its and their agents, servants and/or employees, of an alleged violation of a labor law.

346.    That the failure of an employer such as MCU to timely pay Wages to an
        employee such as Anie, constitutes a violation of the Labor Law of the
        State of New York.

347.    That Anie repeatedly complained to the Employer and the Individual
        Tortfeasors of the unpaid Wages.

348.    That Employer's and Individual Tortfeasor's aforesaid alleged actions,
        conduct and behavior of retaliation and Anie's discharge constitute a
        violation by the Employer's and Individual Tortfeasors, of the New York
        State Wage Theft Prevention Act.

349.    That as a result of defendants' aforesaid violation of the New York State
        Wage Theft Prevention Act, Anie was rendered discharged and
        unemployed, Anie sustained, and will continue to sustain into the future,
        significant loss of income, economic damages, Wages and Wage
        Supplements and was caused to suffer, stress, humiliation, emotional and
        psychological damages, physical and mental pain and suffering, and will
        continue to so suffer into the future.

350.    As a proximate result of Employer's and Individual Tortfeasor's wrongful
        and illegal conduct, Anie has been adversely affected in her employment
        opportunities, her normal life's pursuits, and she believes that these
        injuries have and will continue to have an irreparably devastating effect
        upon the quality of her life, and will prevent her from functioning as she
        did prior to the occurrences complained of herein.

351.    Anie, therefore, seeks monetary damages for this cause of action, for the
        sum to be determined by a trier of fact, including statutory punitive
        damages of $20,000.00, reasonable attorneys' fees, interest, Court costs
        and disbursements.

## AS AND FOR A NINTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST THE DEFENDANTS MCU, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964- SEXUAL HARASSMENT/DISCRIMINATION

352.    Plaintiff repeats and realleges each and every allegation contained in
        paragraph #'s "1"-"351" of this Complaint as though fully and completely
        set forth at length herein.

353.    It is a violation of Title VII for employers such as MCU to discriminate in
        the terms and conditions of employment, because an employee such as
        Anie is a member of a statutorily protected class of individuals.

41

354. Gender and sexual harassment in the workplace are defined by Title VII as a statutorily protected class.

355. Employees that have the terms and conditions of their employment changed, and/or adversely affected, as well as being terminated from employment, because of their sex are defined by Title VII and by case precedent as a protected class.

356. The Lilly Ledbetter Fair Pay Act of 2009 amended Title VII to the extent that a discriminatory compensation decision that is unlawful under Title VII occurs each time compensation is paid pursuant to the discriminatory compensation decision or other practice and for other purposes.

357. Anie was and is a member of the aforesaid protected class.

358. The aforesaid conduct, actions and behavior of the Employer, its agents, servants or employees, were based upon her membership in the aforesaid protected class, in violation of Title VII.

359. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

360. In addition to suffering significant loss of economic damages, bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of the Employer's outrageous and reprehensible conduct in violating Anie's human rights.

361. As a proximate result of the Employer's conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

362. That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

363. Anie, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the

imposition upon the defendants, of a separate award of punitive damages and attorney's fees.

## AS AND FOR A TENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST THE DEFENDANTS MCU, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964- RETALIATION

364.    Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"363" of this Complaint as though fully and completely set forth at length herein.

365.    That under Title VII, an employee complaining of discrimination and/or harassment is a protected activity.

366.    That under Title VII, an employer cannot retaliate against an employee by changing the terms and conditions of their employment for complaints of sex discrimination and/or harassment based on sex.

367.    That it is a violation of Title VII for an employer such as MCU to retaliate against an employee by changing the terms and conditions of their employment for complaints of sex discrimination and/or harassment based on sex.

368.    The aforesaid conduct, actions and behavior of MCU, its and their agents, servants or employees, were based upon Anie's aforesaid complaints as a member in the aforesaid protected class, in violation of Title VII.

369.    That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for retaliation.

370.    In addition to suffering significant loss of economic damages, bonuses, income, perks and benefits, Wage and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of Employer's outrageous and reprehensible conduct in violating Anie's human rights.

371.    As a proximate result of the Employer's conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries have and will continue to have an irreparably devastating effect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

43

372. That the aforesaid actions, conduct and behavior of the Employer, its agents, servants and employees, are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

373. Anie, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon MCU, of a separate award of punitive damages, attorney's fees, Court costs and disbursements.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT

374. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"373" of this Complaint as though fully and completely set forth at length herein.

375. It is a violation of the FLSA for employers such as MCU to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

376. It is a violation of the FLSA for an employer such as Wong to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

377. It is a violation of the FLSA for an employer such as Kohn to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

378. It is a violation of the FLSA for an employer such as Mashburn to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

379. It is a violation of the FLSA for an employer such as Ricca to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

380. It is a violation of the FLSA for an employer such as Di Franco to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

44

381. It is a violation of the FLSA for an employer such as Jiang to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

382. It is a violation of the FLSA for an employer such as Woods to unlawfully withhold payment of proper wages to an employee, including earned bonuses.

383. Employees, such as Anie, that have their proper wages unlawfully withheld are protected from same under FLSA.

384. The aforesaid conduct, actions and behavior of the MCU, and the Individual Tortfeasors, were an intentional violation of FLSA.

385. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for discrimination.

386. As a proximate result of such unlawful conduct, Anie has sustained damages and is entitled to an award for payment of Wages.

387. That in addition to Wages, the violation of FLSA by MCU, and the Individual Tortfeasors, entitles Anie to liquidated damages equal to two (2x) times backpay of Wages (hereinafter "Liquidated Damages").

388. That the aforesaid actions, conduct and behavior of MCU and the Individual Tortfeasors, and their agents, servants and employees, were intentional and are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages and/or Liquidated Damages.

389. Anie, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the Defendants, of a separate award of Liquidated Damages, punitive damages, attorney's fees, Court costs and disbursements.

## AS AND FOR A TWELFTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST ALL DEFENDANTS FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT- RETALIATION

390. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"389" of this Complaint as though fully and completely set forth at length herein.

45

391. That it is a violation of FLSA for an employer such as MCU to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

392. That it is a violation of FLSA for an employer such as Wong to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

393. That it is a violation of FLSA for an employer such as Kohn to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

394. That it is a violation of FLSA for an employer such as Mashburn to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

395. That it is a violation of FLSA for an employer such as Ricca to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

396. That it is a violation of FLSA for an employer such as Di Franco to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

397. That it is a violation of FLSA for an employer such as Jiang to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

398. That it is a violation of FLSA for an employer such as Woods to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for their complaints of sexual harassment/gender discrimination.

399. The aforesaid conduct, actions and behavior of MCU and the Individual Tortfeasors, were based upon Anie's complaints of sexual harassment/gender discrimination, in violation of FLSA.

46

400. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext for retaliation.

401. As a proximate result of such unlawful conduct, Anie has sustained damages, and is entitled to an award any and all available legal and equitable remedies available under FLSA, including payment of Wages, and reinstatement to employment.

402. That in addition to payment of Wages, the violation of FLSA by MCU and the Individual Tortfeasors, entitles Anie to Liquidated Damages.

403. That the aforesaid actions, conduct and behavior of the defendants, their agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

404. Anie, therefore, seeks monetary damages for this cause of action, in an amount in excess of the jurisdictional limits of all lower Courts, the sum of which to be determined by the trier of fact, in addition to the imposition upon the defendants, of a separate award of liquidated/punitive damages, attorney's fees, Court costs and disbursements.

## AS AND FOR AN THIRTEENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST THE DEFENDANT MCU- BREACH OF CONTRACT

405. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"404" of this Complaint as though fully and completely set forth at length herein.

406. That MCU's Handbook constitutes a legally valid and binding contract between the parties hereto (hereinafter the "Employment Contract").

407. That Anie fully discharged her duties to MCU, pursuant to MCU's Handbook.

408. That MCU breached the Employment Contract, including but not limited to, MCU failing to timely (or at all) investigate Anie's claims of sexual harassment/gender discrimination, and instead, terminated her due to her good-faith complaints of sexual harassment/gender discrimination.

409. In addition to suffering significant economic damages, expectancy and/consequential damages, loss of bonuses, income, perks and benefits,

47

Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

410. As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

411. That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of expectancy and/consequential damages, punitive damages, Court costs and disbursements.

## AS AND FOR AN FOURTEENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST THE DEFENDANT MCU- BREACH OF CONTRACT

412. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"411" of this Complaint as though fully and completely set forth at length herein.

413. That pursuant to the Severance Policy in the MCU Handbook, Anie was entitled to fifteen (15) weeks of straight-time pay, for which she detrimentally relied upon, throughout the tenure, and as a continued condition, of her employment at MCU.

414. That Anie complied with her duties and responsibilities per the Employment Contract, such that in consideration thereof, MCU was contractually obligated to pay Anie pursuant to the Severance Policy.

415. That MCU breached the Employment Contract by failing to pay Anie pursuant to the Severance Policy.

416. In addition to suffering significant economic damages, expectancy and/consequential damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future,

48

all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

417.    As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

418.    In addition to suffering significant economic damages, expectancy and/consequential damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

419.    As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

420.    That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

421.    That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, Court costs and disbursements.

## AS AND FOR AN FIFTEENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST THE DEFENDANT MCU- BREACH OF CONTRACT

422.    Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"421" of this Complaint as though fully and completely set forth at length herein.

49

423. That pursuant to the MCU Handbook, MCU undertook a contractual duty and obligation to Anie, upon her reporting of Anie's Multiple Whistleblower Complaints.

424. In consideration thereof, MCU contractually agreed to treat Anie fairly and reasonably and take all reasonable and practical efforts to protect Anie from potential or actual retaliation.

425. Anie acted in good-faith in her reporting of Anie's Multiple Whistleblower Complaints in reliance on MCU's contractual duty that she would not be retaliated against with regards to the terms and conditions of her employment.

426. Anie fully performed all of her obligations under pursuant to MCU's Handbook.

427. MCU violated and breached the Employment Contract by retaliating against Anie, terminating her employment, and failing to pay Anie the Wage and Wage Supplements.

428. That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, Court costs and disbursements.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST MCU- BREACH OF GUARANTEE AND IMPLIED COVENANT OF FAIR DEALING

429. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"428" of this Complaint as though fully and completely set forth at length herein.

430. MCU's Handbook encouraged MCU's agents, servants and employees such as Anie, the reporting of financial improprieties and its protection of those who so report it, from reprisal.

431. The reporting of such alleged financial improprieties, such as Anie's Second Whistleblower Complaint, and reciprocal promise of protection in MCU's Handbook imposed an express limitation on a term of Anie's employment that she would be protected against retaliation.

432. MCU did not protect Anie against retaliation, but instead perpetuated the retaliation.

50

433. MCU's pledge was a guarantee made to Anie that she would be given protection in her employment against any retaliation for reporting such financial improprieties.

434. In addition, MCU has encouraged the reporting of such financial improprieties in exchange for its promise and commitment that the complainant, Anie herein, would be protected against perceived or actual retaliation from her complaint.

435. Anie was retaliated against in her employment for having reported the alleged financial improprieties.

436. MCU, though required to act in accordance with MCU's Handbook with Anie, did nothing to protect against, terminate or ameliorate Anie's actual or perceived retaliation.

437. By breach of its pledge of non-retaliation, MCU failed to honor its express guarantee to Anie that she would be protected from retaliation.

438. MCU has further breached the covenant of good faith and fair dealing implied in its Employment Contract by acting adversely to Anie in her job function and employment.

439. In addition to suffering significant economic damages, expectancy and/or consequential damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

440. As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

441. That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

51

442. That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, Court costs and disbursements.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST THE DEFENDANT MCU- BREACH OF GUARANTEE AND IMPLIED COVENANT OF FAIR DEALING

443. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"442" of this Complaint as though fully and completely set forth at length herein.

444. That the Employment Contract encouraged the reporting of sexual harassment and its protection of those who so report it, from reprisal.

445. The reporting of such alleged sexual harassment and reciprocal promise of protection in the Employment Contract imposed an express limitation on a term of Anie's employment that she would be protected against retaliation.

446. MCU did not protect Anie against retaliation, but instead perpetuated the retaliation.

447. MCU's pledge was a guarantee made to Anie that she would be given protection in her employment against any retaliation for reporting such sexual harassment.

448. In addition, MCU has encouraged the reporting of such sexual harassment in exchange for its promise and commitment that the complainant, Anie herein, would be protected against perceived or actual retaliation from her complaint.

449. Anie was retaliated against in her employment for having reported the alleged sexual harassment.

450. MCU, though required to act in accordance with its Employment Contract with Anie, did nothing to protect against, terminate or ameliorate Anie's actual or perceived retaliation all the while allowing the sexual harassment complaints and investigation to stall and languish.

451. By breach of its pledge of non-retaliation, MCU failed to honor its express guarantee to Anie that she would be protected from retaliation.

52

452.   MCU has further breached the covenant of good faith and fair dealing implied in its Employment Contract by acting adversely to Anie in her job function and employment.

453.   In addition to suffering significant economic damages, expectancy and/consequential damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

454.   As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

455.   That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

456.   That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, Court costs and disbursements.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST MCU FOR PROMISSORY ESTOPPEL

457.   Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"456" of this Complaint as though fully and completely set forth at length herein.

458.   MCU's Whistleblower Policy was drafted in order to induce members of its workforce to report compliance and ethical concerns and concerns of financial improprieties.

459.   That MCU's Whistleblower Policy, which had been promulgated at different times, contain a reciprocal promise that MCU shall protect individuals who make complaints in good faith from acts of retaliation.

53

460. MCU clearly and expressly prohibits and/or otherwise promised to protect against retaliation who in good faith report compliance and ethical concerns and concerns of research misconduct.

461. Anie relied upon MCU's promise to protect her from retaliation, not only when she reported the Sexual Harassment, but throughout the Wong Investigation and Anie's Multiple Whistleblower Complaints.

462. Anie's reliance upon MCU's promise to protect her from retaliation was clear and unequivocal on its face as expressed in MCU's written policies.

463. Notwithstanding its stated obligation to investigate complaints made in good faith to protect all complainants, including Anie, from retaliation, MCU had no intention to comply with, enforce or otherwise discharge to Anie, to its promise as it concerned Anie's complaints of Sexual Harassment and Anie's Multiple Whistleblower Complaints, and in fact, failed to do so.

464. Rather than investigate Anie's complaints of Sexual Harassment and Anie's Multiple Whistleblower Complaints, MCU failed to inquire about its substance, and instead of protecting Anie from retaliation, MCU retaliated against Anie for reporting the complaints of Sexual Harassment and Anie's Multiple Whistleblower Complaints, and then further retaliated against her for her continued complaints of retaliation, as herein alleged.

465. By reason of the foregoing, MCU failed to adhere to its affirmative guarantee and reciprocal promise to protect Anie from reprisals, and should be estopped from claiming that its promise to protect and prohibit retaliation is non-binding.

466. In addition to suffering significant economic damages, expectancy and/consequential damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

467. As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

54

468. That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

469. That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, Court costs and disbursements.

## AS AND FOR AN NINETEENTH CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST MCU FOR PROMISSORY ESTOPPEL

470. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"469" of this Complaint as though fully and completely set forth at length herein.

471. MCU's Handbook was drafted in order to induce members of its workforce to comply with the provisions therein, in detrimental reliance upon the consideration therein, including the provisions including Severance Pay.

472. MCU clearly and expressly afforded Severance Pay to employees terminated for reasons such as Anie.

473. Anie relied upon MCU's promise of Severance Pay as a condition of her employment with MCU.

474. Anie's reliance upon MCU's promise of Severance Pay was clear and unequivocal on its face as expressed in MCU's written policies.

475. That MCU had no intention to comply with, enforce or otherwise discharge to Anie, to its promise as it concerned Severance Pay to Anie.

476. By reason of the foregoing, MCU failed to adhere to its affirmative guarantee and reciprocal promise to protect Anie from reprisals, and should be estopped from claiming that its promise to pay Severance Pay is non-binding.

477. In addition to suffering significant economic damages, expectancy and/consequential damages, loss of bonuses, income, perks and benefits, Wages and Wage Supplements, Anie was caused to suffer physical

55

injuries, stress, humiliation, emotional and psychological damages, mental pain and suffering, and will continue to so suffer into the future, all because of defendants' outrageous and reprehensible conduct in violating Anie's human rights.

478. As a proximate result of Defendants' conduct, Anie has been adversely affected in her employment opportunities, her normal life's pursuits, and she believes that these injuries has and will continue to have an irreparably devastating affect upon the quality of her life, and will prevent her from functioning as she did prior to the occurrences complained of herein.

479. That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

480. That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, Court costs and disbursements.

## AS AND FOR AN TWENTY-FIRST CAUSE OF ACTION ON BEHALF OF THE PLAINTIFF ANIE AKPE-LEWIS AGAINST MCU FOR VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 § 510

481. Plaintiff repeats and realleges each and every allegation contained in paragraph #'s "1"-"480" of this Complaint as though fully and completely set forth at length herein.

482. That it is a violation of ERISA for an employer such as MCU to retaliate against an employee, such as Anie, by adversely treating an employee, such as Anie, with regards to terms and conditions of employment for the improper purpose of interfering with her ERISA rights and/or benefits.

483. That the Employee Benefits offered and provided to the employees of MCU, including Anie, constituted, were and are, ERISA rights and/or benefits.

484. The aforesaid conduct, actions and behavior of MCU in depriving Anie from the right to receive Employee Benefits during the Severance Period, were in whole and/or in part, based upon complaints of sexual harassment/gender discrimination, and Anie's Multiple Whistleblower Complaints in violation of ERISA.

56

485. That any and all alleged reasons, explanations or justifications for the aforesaid conduct, behavior and actions were and are a pretext.

486. As a proximate result of such unlawful conduct, Anie has sustained damages, and is entitled to an award any and all available legal and equitable remedies available under ERISA, including but not limited to, contributions owed from MCU, interest of the unpaid contributions, attorney's fees and restitution.

487. That the aforesaid actions, conduct and behavior of MCU, its agents, servants and employees, were intentional are beyond and what is considered reasonable and acceptable in a civilized society, and shocks the conscience of this Honorable Court, and thus warrants an award of punitive damages.

488. That therefore MCU is indebted and liable to Anie, and Anie is entitled to a monetary Judgment as against MCU for all resulting damages, in an amount in excess of the jurisdictional limits of this Court, the specific sum to be determined by a trier of fact, in addition to Anie being entitled to an award of punitive damages, Court costs and disbursements.

WHEREFORE, plaintiff ANIE AKPE-LEWIS demands monetary judgment against defendants MUNICIPAL CREDIT UNION, KAM WONG, NORMAN KOHN, SHANNON MASHBURN, MARK RICCA, SONITA DI FRANCO, STELLA JIANG, and KAY WOODS in accordance with the aforesaid causes of action, along with the costs, fees and disbursements of this action.

Dated: New York, New York
March 16, 2020

Yours, etc.,

CARLA P. BAUTISTA
ALAN J. BENNETT, PLLC
Attorneys for Plaintiff
ANIE AKPE-LEWIS
369 Lexington Avenue
Suite 213
New York, New York 10017
(212) 696-2116

57

STATE OF NEW YORK          )
                                                 SS:
COUNTY OF NEW YORK       )

CARLA P. BAUTISTA, being duly sworn, deposes and states as follows:

That I am an associate of the law firm of ALAN J. BENNETT, PLLC, attorneys for the plaintiff ANIE AKPE-LEWIS in the above-captioned matter. I have read the foregoing COMPLAINT, know the contents thereof, and upon information and belief, I believe the matters alleged therein to be true.

The reason this verification is made by myself and not by the plaintiff, is that the plaintiff does not reside within a County in which I maintain my principal place of business.

Dated:  New York, New York
            March 16, 2020

_____
CARLA P. BAUTISTA